NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@trialnewport.com
James B. Hardin, Bar No. 205071
jhardin@trialnewport.com
Ryan M. Ferrell, Bar No. 258037
rferrell@trialnewport.com
895 Dove Street, Suite 425
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JOHNNIE PACHECO, individually, and on
behalf of all others similarly situated,

        Plaintiff,

        vs.

USPLabs, LLC; and DOES 1-25, Inclusive,

        Defendants.

**EDCV11-02015 VAP (SPx)**

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff JOHNNIE PACHECO ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following on information and belief:

## I.    INTRODUCTION

1.    USPLabs, LLC ("Defendant") manufactures, markets, and sells Jack3d and OxyELITE Pro (collectively "the Products") as "Ultra-Premium supplements" that can provide "safe and effective" weight loss and muscle building.  Defendant claims their Products are "University Studied" and that research supports the efficacy and safety claims about their Products.  Defendant also advertises the Products as "completely legal."

2.     In reality, both OxyELITE Pro and Jack3d contain an ingredient called 1,3-dimethylamylamine, often referred to as "DMAA."  The form of DMAA Defendant sells in the Products is a synthetic form that is both illegal and dangerous. The statements about the Products' legality, safety and efficacy are false and misleading, and the research relied upon by Defendant is inadequate and/ or seriously flawed with regard to Defendant's claims.  In fact, the Army and Air Force Exchange Service has banned the sale of products containing DMAA after receiving reports of a number of serious health effects among known and potential users of products containing DMAA including death, kidney and liver failure, seizures, loss of consciousness, heat injury and muscle breakdown during exertion, and rapid heartbeat.

3.     Defendant's misrepresentations regarding the legality, safety and efficacy of Jack3d and OxyELITE Pro were designed to, and did, lead Plaintiff and others similarly situated (collectively the "Class") to believe that these Products were legal, safe, and effective.  Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for the Products but for Defendant's misrepresentations.

4.     Plaintiff brings this class action lawsuit to enjoin the ongoing deception of thousands of California consumers by Defendant, and to recover the money taken by this unlawful practice.

## II.     THE PARTIES

### A.     Plaintiff.

5.     Plaintiff is a resident of San Bernardino, California and purchased Jack3d and OxyELITE Pro in San Bernardino County, California.  Plaintiff relied on Defendant's representations regarding the safety, efficacy and legality of the Products, as detailed herein, and but for those representations, Plaintiff would not have purchased or paid as much for the Products.

### B.     Defendant.

6.     Defendant USPLabs, LLC is a Texas limited liability company with its principal place of business located at 2221 Manana Drive, Suite 120, Dallas, Texas 75220.  USPLabs develops and markets Jack3d and OxyELITE Pro, and does business in California.

7.     The true names and capacities, whether individual, corporate, associate, representative, alter ego or otherwise, of defendants and/or their alter egos named herein as DOES 1 through 25

- 2 -

inclusive are presently unknown to Plaintiff at this time, and are therefore sued by such fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiff will amend this Complaint to allege the true names and capacities of DOES 1 through 25 when the same have been ascertained. Plaintiff are further informed and believe and based thereon allege that DOES 1 through 25 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below.

### III.   JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts over any class action in which any member of the Plaintiff Class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,0000, exclusive of interest and costs.

9.     Plaintiff alleges that the total damages of the individual members of the Plaintiff Class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

10.     As set forth above, Plaintiff is a citizen of California and Defendant is a citizen of Texas.   Therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A).

11.     Venue is proper in this Court because Plaintiff purchased the Product in this Judicial District and because Defendant has received substantial compensation from sales in this Judicial District.  Specifically, Defendant knowingly engages in activities directed at consumers in this Judicial District, and Defendant obtains substantial benefits from its scheme perpetrated in this Judicial District.  The declaration of venue required by California Civil Code § 1780(d) is attached hereto as Exhibit 1.

### IV.   FACTS

12.     Defendant manufactures, markets, and sells Jack3d and OxyELITE Pro as "Ultra-Premium supplements" that can provide "safe and effective" weight loss and muscle building.

Defendant claims their Products are "University Studied" and that research supports their efficacy and safety claims about their Products.   Defendant advertises the Products as "completely legal" dietary supplements.

13.    The form of DMAA Defendant sells in the Products is a synthetic form that is both illegal and dangerous.  Defendant's advertising statements regarding the safety and legality of the Products are false and misleading, and the research relied upon by Defendant is inadequate and/or seriously flawed with regard to Defendant's safety and efficacy claims.

14.    Defendant's DMAA is manufactured synthetically, and therefore unlawfully on the market as an ingredient in Defendant's Products which, because they include Defendant's DMAA, are both "adulterated" dietary supplements pursuant to the Food, Drug, and Cosmetic Act.  Assuming, *arguendo*, Defendant's DMAA is not synthetically manufactured and it is instead naturally extracted from the geranium plant (as Defendant has also claimed), Defendant's DMAA, by virtue of its inclusion in Defendant's Products, makes the Products nevertheless "adulterated" dietary supplements and unlawfully on the market pursuant to the Food, Drug, and Cosmetic Act.   Support for these allegations include without limitation the following:

(a)    Defendant's DMAA, because it is synthetic, cannot be a "constituent" of a botanical and cannot qualify as a dietary ingredient and be legally sold in a dietary supplement under 21 U.S.C. § 321(ff)(1)(F), nor could it be an extract of a botanical under 21 U.S.C. § 321(ff)(1)(F) because it was not actually extracted from the botanical, as clarified in the Food and Drug Administration's "Draft Guidance for Industry: Dietary Supplements: New Dietary Ingredient Notifications and Related Issues" (July 2011) at Section IV.D.2;

(b)    Assuming Defendant's DMAA is a dietary ingredient, it is a new dietary ingredient pursuant to 21 U.S.C. § 350b(c) because it is an ingredient that was

- 4 -

not marketed as a dietary ingredient in the United States before October 15, 1994;

(c)    Assuming Defendant's DMAA is a dietary ingredient, a proper notification was not submitted to the Food and Drug Administration by Defendant with respect to Defendant's DMAA at least seventy-five days prior to the first sale of Defendant's Products, even though such a notification would have been required by virtue of the ingredient's inclusion in the Products pursuant to 21 U.S.C. § 350b(a)(2), assuming Defendant's DMAA is a dietary ingredient;

(d)    Even if Defendant's DMAA is a dietary ingredient and was marketed as a dietary ingredient in the United States before October 15, 1994, it was not marketed in the same chemical composition or structure as in Defendant's Products, as clarified in the Food and Drug Administration's "Draft Guidance for Industry: Dietary Supplements: New Dietary Ingredient Notifications and Related Issues" (July 2011) at Section IV.A.11;

(e)    Defendant's DMAA is not present in the food supply as an article used for food in a form in which the food has not been chemically altered, as would otherwise be allowed by 21 U.S.C. § 350b(a)(1), because Defendant's claims that Defendant's DMAA "is a natural constituent of the geranium flower" is false (because Defendant's DMAA is synthetic); and/or

(f)    Defendant's DMAA is a component of dietary supplements that have not been prepared, packed, or held under conditions that meet current good manufacturing practice regulations, as required by 21 U.S.C. § 342(g)(1).

15.    Defendant also makes numerous efficacy and safety assertions which Defendant claims are supported by University studies, testing and other "research."  Some of the claims include:

(a)    "USPLabs Athletes – Real People Real Results";

(b)    "Jack3d is THE original University Studied Ultra-Concentrated Pre-Workout...";

(c)    "Jack3d is now backed by multiple University studies, including double-blind, placebo-controlled research";

(d)    "Of course, Jack3d has already been "put to the test" by lifters all around the globe...";

(e)    "Needless to say, if you want the best, look no further than Jack3d – proven in the real world & in the lab...";

(f)    "NOTHING delivers consistent workout domination for such a great price – NOTHING!";

(g)    "Perfectly-executed matrix of energy-spawning, muscle-engorging compounds only found in Jack3d";

(h)    "From Day 1, USPlabs has been focused on YOU – delivering cutting edge products that allow you to kick ass & take names..."; and

(i)    Introducing a burner coined the "Super Thermogenic™" by those familiar with its effectiveness... It's called OxyELITE Pro™ & It's absolutely unmatched!"

16.    In reality, no reliable clinical research or University Testing can support the above claims made by Defendant. Those "tests" and "studies" purportedly relied upon by Defendant used testing samples too small to conclusively show any real results,[1] failed to accurately report the results,[2] and were produced *on the same day* by *the same open-access, online journal*, Nutrition and Metabolic Insights.[3]

---

[1] Cameron G. McCarthy, et al., "A Finished Dietary Supplement Stimulates Lipolysis and Metabolic Rate in Young Men and Women," Nutrition and Metabolic Insights (Dec. 6, 2011) (study only had twelve test subjects over two days of testing, some of which merely took a placebo).

[2] Cameron G. McCarthy, et al., "Biochemical and Anthropometric Effects of a Weight Loss Dietary Supplement in Healthy Men and Women," Nutrition and Metabolic Insights (Dec. 6, 2011) (study merely reported all differences in appetite, body weight, body fat percentage, and skinfold thickness with blanket statements of being more than 5%, failing to give any real placebo to product ratios).

[3] *Id. See also* fn. 1 *and* Tyler M. Farney, et al., "Hemodynamic and Hematologic Profile of Healthy Adults Ingesting Dietary Supplements Containing 1,3-Dimethylamylamine and Caffeine," Nutrition and Metabolic Insights (Dec. 6, 2011).

CLASS ACTION COMPLAINT

17.     Concern about the safety and legality of DMAA has spread so wide that the United States military removed all products containing DMAA from their Army and Air Force Exchange Service and Navy Exchange stores around the world on December 3, 2011.  The U.S. military was prompted to remove all DMAA products from their shelves after two soldiers suffered heart attacks and died earlier this year during physical training.  The deaths prompted the U.S. to Army to launch an "ongoing safety review after recording a number of other serious health effects among known and potential users of products containing DMAA including kidney and liver failure, seizures, loss of consciousness, heat injury and muscle breakdown during exertion, and rapid heartbeat."[4]

18.     Defendant's misrepresentations regarding the efficacy, safety and legality of the Products were designed to, and did, lead Plaintiff and others similarly situated (collectively the "Class") to believe that the Products were not only effective, but legal and safe as well.  Plaintiff and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for the Products but for Defendant's misrepresentations.

19.     Plaintiff brings this class action lawsuit to enjoin the ongoing deception of thousands of California consumers by Defendant, and to recover the money taken by this unlawful practice.

20.     Defendant sells the Products for approximately $59.99 and $44.99 respectively based on the preceding false advertising claims.  As a result, Defendant has wrongfully taken millions of dollars from California consumers.

21.     Accordingly, Plaintiff brings this lawsuit to enjoin the ongoing deception of thousands of California consumers by Defendant, and to recover the funds taken by this unlawful practice.

## V.     CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action for damages and other monetary relief on behalf of the following class:

---

[4] Travis J. Tritten, "Army probing connection between body building supplement, 2 deaths," Stars and Stripes, (December 15, 2011) *available at* http://www.stripes.com/news/army-probing-connection-between-body-building-supplement-2-deaths-1.163652 (last visited December 18, 2011).

All persons located within California who purchased Jack3d and/or
OxyELITE Pro at any time during the four years preceding the filing of
this Complaint (the "Class").

23.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

24.     The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of Class members is at least in the tens of thousands and members of the Class are numerous and geographically dispersed across California. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

25.     There is a well-defined community of interest in the questions of law and fact involved affecting the plaintiff class and these common questions predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a.     Whether Defendant's efficacy, safety and legality claims are accurate;

b.     Whether Defendant's efficacy, safety and legality claims are properly substantiated;

c.     Whether Defendant has falsely represented that Jack3d and OxyELITE Pro have uses and benefits which they do not have;

d.     Whether Defendant knew that its efficacy, safety and legality claims were false;

e.     Whether Defendant's conduct constitutes a violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*);

f.     Whether Defendant's conduct constitutes a violation of California's false

advertising law (Cal. Bus. & Prof. Code §§ 17500, et seq.);

g.    Whether Defendant's conduct constitutes an unfair, unlawful, and/or fraudulent business practice in violation of California's unfair competition law (Cal. Bus. & Prof. Code §§ 17200, et seq.);

h.    Whether Plaintiff and Class members are entitled to compensatory damages, and if so, the nature of such damages;

i.    Whether Plaintiff and Class members are entitled to restitutionary relief; and

j.    Whether Plaintiff and Class members are entitled to injunctive relief.

26.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning the Products and purchased them based on those representations.

27.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Plaintiff has retained a law firm who is widely recognized as one of the most successful and effective class action litigators in California, and whose victories have been publicized on CNN, Fox News, MSNBC, and nearly every major California newspaper.  The firm has also been certified as lead class counsel in similar class actions, including a suit involving a homeopathic product.  (*See DeLaRosa v. Boiron, Inc.*, Case No. 8:10-CV-1569-JST (CWx) (C.D. Cal.)).

28.    Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the class is impracticable.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class

action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

29. Adjudication of individual class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

### (CAL. CIV. CODE §§ 1750, *ET SEQ.*)

**(By Plaintiff and on Behalf of the Class Against Defendant)**

30. Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

31. Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury in fact and has lost money as a result of Defendant's actions as set forth herein. Specifically, Plaintiff purchased the Products in reliance on Defendant's marketing claims with respect to efficacy, safety and legality. Plaintiff used the Products as directed, but it did not work as advertised and was not of the quality and standard advertised by Defendant.

32. Defendant has engaged in and continue to engage in business practices in violation of California Civil Code §§ 1750, *et seq.* (the "Consumers Legal Remedies Act") by making false and unsubstantiated representations concerning the efficacy, safety and legality of the Products. These business practices are misleading and/or likely to mislead consumers and should be enjoined.

33. Defendant has engaged in deceptive acts or practices intended to result in the sale of Jack3d and OxyELITE PRO in violation of Civil Code § 1770. Defendant knew and/or should have known that their representations of fact concerning the efficacy, safety and legality of the Products were material and likely to mislead the public. Defendant affirmatively misrepresented that the

- 10 -

Products were of a certain standard and quality with certain benefits which they did not have.

34.     Defendant's conduct alleged herein violates the Consumers Legal Remedies Act, including but not limited to, the following provisions: (1) using deceptive representations in connection with goods or services in violation of Civil Code § 1770(a)(4); (2) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Civil Code § 1770(a)(5); and/or (3) advertising goods or services with intent not to sell them as advertised in violation of Civil Code § 1770(a)(9).  As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to, money.  Therefore, Defendant has been unjustly enriched.

35.     There is no other adequate remedy at law, and Plaintiff and Class members will suffer irreparable harm unless Defendant's conduct is enjoined.

36.     In conjunction with filing this action, Plaintiff's counsel mailed to Defendant, by certified mail, return receipt requested, the written notice required by Civil Code Section 1782(a).  A copy of this letter is attached hereto as Exhibit 2.  Should Defendant fail to respond within thirty days, Plaintiffs will amend to seek damages under the California Consumer Legal Remedies Act.

37.     The declaration of venue required by Civil Code § 1780(d) is attached hereto as Exhibit One.

38.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the Consumers Legal Remedies Act since Defendant is still representing that their Products have characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiff and the Class.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

#### (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)

#### (By Plaintiff and on Behalf of the Class Against Defendant)

39.     Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

40.     Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury

in fact and has lost money as a result of Defendant's actions as set forth herein. Specifically, Plaintiff purchased Jacck3d and OxYELITE Pro in reliance on Defendant's marketing claims. Plaintiff used the Products as directed, but it did not work as advertised and did not provide any of the promised benefits.

41. Defendant has engaged in false advertising as it has disseminated false and/or misleading representations about the Products.

42. Defendant knew or should have known by exercising reasonable care that its representations were false and/or misleading. During the Class Period, Defendant engaged in false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by misrepresenting in its advertising and marketing of the Products to Plaintiff, Class members, and the consuming public that their Products are effective, safe, and legal.

43. Each of the aforementioned representations alleged in this Complaint was false and misleading because the Products are not of the standard, quality or grade advertised, and are in reality unsafe, ineffective, and illegal.

44. By disseminating and publishing these statements in connection with the sale of the Products, Defendant has engaged in and continue to engage in false advertising in violation of Bus. & Prof. Code §§ 17500, *et seq.*

45. As a direct and proximate result of Defendant's conduct, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to, money. Therefore, Defendant has been unjustly enriched. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff requests restitution and restitutionary disgorgement for all sums obtained in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

46. Plaintiff seeks injunctive relief, restitution, and restitutionary disgorgement of Defendant's ill-gotten gains as specifically provided in Cal. Bus. & Prof. Code § 17535.

47. Plaintiff and Class members seek to enjoin Defendant from engaging in these wrongful practices, as alleged herein, in the future. There is no other adequate remedy at law and if an injunction is not ordered, Plaintiff and the Class will suffer irreparable harm and/or injury.

### THIRD CAUSE OF ACTION

### UNLAWFUL, FRAUDULENT & UNFAIR BUSINESS PRACTICES

### (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)

#### (By Plaintiff and on Behalf of the Class Against Defendant)

48.     Plaintiff incorporates by this reference the allegations contained in the paragraphs above as if fully set forth herein.

49.     Plaintiff has standing to pursue this cause of action because Plaintiff has suffered injury in fact and has lost money as a result of Defendant's actions as set forth herein.  Specifically, Plaintiff purchased the Jack3d and OxyELITE Pro in reliance on Defendant's marketing claims.  Plaintiff used the Products as directed, but it did not work as advertised and were not of the standard, quality and grade advertised.

50.     Defendant's actions as alleged in this Complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code §§ 17200, *et seq.*, in that Defendant's actions are unfair, unlawful, and fraudulent, and because Defendant has made unfair, deceptive, untrue, or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code §§ 17200, *et seq.*

51.     Defendant knew or should have known by exercising reasonable care that its representations were false and/or misleading.  During the Class Period, Defendant engaged in unfair, unlawful, and fraudulent business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, by misrepresenting in its advertising and marketing of the Products to Plaintiff, Class members, and the consuming public that, the Products were effective, safe and legal.

52.     Each of the aforementioned representations alleged in this Complaint was false and misleading because the Products are not of the standard, quality or grade advertised, and are in reality both unsafe and illegal.

53.     Defendant's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers in that consumers are misled by the claims made with respect to the Products as set forth herein.

54.     Defendant's business practices, as alleged herein, are unlawful because they violate the Consumers Legal Remedies Act and False Advertising Law.

55.     Defendant's business practices, as alleged herein, are fraudulent because they are likely to, and did, deceive customers—including Plaintiff and members of the Class—into believing that the Products have characteristics and benefits they do not have.

56.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is marketing and selling their Products in a manner likely to deceive the public.

57.     As a direct and proximate result of Defendant's wrongful business practices in violation of Business and Professions Code §§ 17200, *et seq.*, Plaintiff and members of the Class have suffered economic injury by losing money as a result of purchasing the Products.  Plaintiff and members of the Class would not have purchased or would have paid less for the Products had they known that they were not as represented.

58.     Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the Complaint. Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys they wrongfully obtained from Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class request that the Court enter an order or judgment against Defendant, and each of them as named in the future, as follows:

1.     For an order certifying the Class, appointing Plaintiff and his counsel to represent the Class, and notice to the Class to be paid by Defendant;

2.     For damages suffered by Plaintiff and Class members;

3.     For restitution to Plaintiff and Class members of all monies wrongfully obtained by Defendant;

4.     For an injunction ordering Defendant to cease and desist from engaging in the unfair,

unlawful, and/or fraudulent practices alleged in the Complaint;

5.      For both pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded;

6.      For Plaintiff's costs of the proceedings herein;

7.      For reasonable attorneys' fees as allowed by statute; and

8.      For any and all such other and further relief that this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated:  December 19, 2011

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell

By:  _____
        Scott J. Ferrell

Attorney for Plaintiff and the Class

1    I, Johnnie Pacheco, declare as follows:

2        1.      I am a Plaintiff in this action, and am a citizen of the State of California.  I have

3    personal knowledge of the facts herein and, if called as a witness, I could and would testify

4    competently thereto.

5

6        2.      The Complaint in this action, filed concurrently with this Declaration, is filed in the

7    proper place for trial under Civil Code Section 1780(d) in that _____ County is a county

8    in which Defendants are doing business.

9

10       I declare under penalty of perjury under the laws of the State of California that the foregoing is

11   true and correct.

12

13                                                    _____
                                                     Johnnie Pacheco
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

DECLARATION RE VENUE

Exhibit 1 Page 16



# NEWPORT
## T R I A L   G R O U P
*A Professional Corporation*

895 Dove Street, Suite 425
Newport Beach, CA 92660
Phone (949) 706-6464
Fax (949) 706-6469
www.trialnewport.com

December 19, 2011

**<u>CERTIFIED MAIL</u>**
**<u>RETURN RECEIPT REQUESTED</u>**

USPLabs, LLC
2221 Manana Drive, Suite 120,
Dallas, Texas 75220

Re:    *Violations of California Consumer Protection Laws*

Dear Sir or Madam:

I am writing on behalf of an individual California consumer, as well as a putative class of similarly situated consumers, to advise you that we believe you are violating the California Consumer Legal Remedies Act ("CLRA").

Specifically, you label, advertise, and sell the products Jack3d and OxyELITE Pro. Your labeling and advertising states that the products are "dietary supplements" and includes the ingredient 1,3-dimethylamylamine. We believe the inclusion of this ingredient in your products is unlawful because these ingredients are steroids or steroid-like substances. Our belief is based on the fact that the ingredient is not a dietary ingredient such as vitamins, minerals, amino acids, herbs or other botanicals; nor is the ingredient a concentrate, metabolite, constituent, extract or combination of any such dietary ingredients. Thus, because Jack3d and OxyElite Pro have ingredients that are not dietary ingredients, we do not believe they qualify as "dietary supplements." See 21 U.S.C. § 32l(ff). Rather, as the product clearly does claim to affect the structure or function of the body by its testosterone-boosting, anabolic properties, it appears to be a drug. See 21 U.S.C. § 321(g)(l)(C). If our belief is correct, and we believe it is, the inclusion of the above ingredient in Jack3d and OxyELITE Pro makes the product an unapproved "new drug" because it is not generally recognized as safe and effective for its labeled uses, as well as a "prescription drug" due to its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, making it not safe for use except under the supervision of a practitioner licensed by law to administer the product. See 21 U.S.C. § 321(p) and 21 U.S.C. § 353(b)(1)(A). For these reasons, we contend that Jack3d and OxyELITE Pro are falsely and misleadingly advertised as a "dietary supplement," in violation of the CLRA.

Even if the inclusion of the ingredient does not make Jack3d and OxyELITE Pro a drug, we believe they are certainly new dietary ingredients (NDIs) because they are dietary ingredients that were not marketed in the United States before October 15, 1994. See 21 U.S.C. § 350b(c). Our understanding is that a NDI notification was not submitted to the FDA 75 days prior to the

Exhibit 2 Page 17

USPLabs, LLC
December 19, 2011
Page 2

first sale of your product, even though we believe such a notification would have been required. On that point, we note that 1,3-dimethylamylamine does not appear to be dietary ingredients that has been present in the food supply as articles used for food in a form in which the food has not been chemically altered. See 21 U.S.C. § 350b(a)(1). Nor do we believe you would have sufficient information, to include citations to published articles, supporting a proper NDI notification and the notion that your product would reasonably be expected to be safe when used under the conditions recommended or suggested in the product's labeling. As a result, we believe Jack3d and OxyELITE Pro are adulterated products. See 21 U.S.C. § 342(f). It is therefore on the market unlawfully, in further violation of the Act.

We respectfully request that you agree to irrevocably stop all false and misleading advertising and labeling of this and similar products marketed and that you provide all consumers who have purchased the product with a full refund. If you conform your activities to comply with California law, we will take no further action in this matter. We invite you to contact us to further discuss and resolve this matter.

Very truly yours,

NEWPORT TRIAL GROUP
A Professional Corporation

Scott J. Ferrell

SJF:sp

Exhibit 2 Page 18